UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.N. and I.N., individually and on behalf of S.N.,

Plaintiffs,

-against-

PEARL RIVER UNION FREE SCHOOL DISTRICT,

Defendant.

**OPINION AND ORDER**

25-CV-05883 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiffs K.N. and I.N. (collectively, "Plaintiffs") bring this action, individually and on behalf of their minor child, S.N., against Pearl River Union Free School District ("Defendant" or the "District"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*.[1] (Doc. 1, "Compl."). Plaintiffs seek judicial review of a decision by a State Review Officer ("SRO") at the New York State Education Department who found that: (i) Defendant provided S.N. with a free appropriate public education ("FAPE"); and (ii) Plaintiffs were not entitled to reimbursement for S.N.'s unilateral placement consisting of home-based applied behavior analysis ("ABA") methodology and Prompts for Restructuring Oral Muscular Phonetic Targets ("PROMPT") speech therapy. (*Id.* ¶ 1; SD3).[2] Plaintiffs seek reversal of that decision,

[1] The preliminary statement of the Complaint also states that the action is brought under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and 42 U.S.C. § 1983, but Plaintiffs did not set forth in the Complaint any claims for relief under either Section 504 or 42 U.S.C. § 1983. (*See generally* Compl.). Nor did the parties address any such purported claims in their summary judgment briefing.

[2] The Court adopts the Bates numbering applied by the parties to the administrative record for ease of reference and consistency. The record here was filed under seal, as is common in IDEA cases. As such, and in an abundance of caution, the Court will quote herein only to information that is substantively disclosed in the parties' briefing and thus, already made public. Moreover, the SRO decision contains quotes from the same administrative record and was publicly filed with the Complaint. (Doc. 1-1). The need for the Court to conduct a *de novo* review and cite directly to the record outweighs the potential privacy interest in refraining from doing so, especially in light of Plaintiffs' and S.N.'s pseudonymity in this matter. *See W.G. v. New York City Dep't of Educ.*, 801 F. Supp. 2d 142 (S.D.N.Y. 2011).

reinstatement of the impartial hearing officer ("IHO") decision, reimbursement for the costs of ABA and PROMPT therapy services for the 2022-23 and 2023-24 school years, attorneys' fees, and declaratory relief. Before the Court are the parties' cross-motions for summary judgment. (Doc. 14; Doc. 14-1; Doc. 14-2, "56.1"). Neither party filed separate opposition to the other party's respective motion for summary judgment, and no replies were filed.

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED and Plaintiffs' motion is DENIED.

## BACKGROUND

I. S.N.'s Condition, Educational History, and IEPs

S.N., who resides within the District, is a student with disabilities. (56.1 ¶¶ 1, 3, 5). S.N. is classified as a student with a disability under the category of multiple disabilities and has received special education services since July 2010. (*Id.* ¶¶ 5, 6). His diagnoses include moderate intellectual developmental disorder, apraxia of speech, attention deficit hyperactivity disorder, developmental dysarthria, hypotonia, speech language-motor speech disorder, sensory processing disorder, and seizures. (*Id.* ¶ 7). S.N. benefits from a structured environment with minimal distractions and requires intensive educational supports to address his multiple disabilities, including extra time for processing and maintaining attention to stay on task; flexibility and structure regarding when and how one-to-one instruction is delivered; the creation of multiple opportunities for one-to-one instruction throughout S.N.'s day; integration of opportunities for sensory balance throughout his educational programming; and multiple repetitions and strict error correction procedures. (*Id.* ¶¶ 10-16; PE159; DE305).[3]

[3] Defendant denied many facts in the Rule 56.1 Statement, including paragraphs 15 and 16, without citation to any record evidence. (*See, e.g.*, 56.1 ¶ 15 (responding, as follows: "This statement is unsupported by the record references cited as required by Local Rule 56.1(d) and consequently does not require a response. Otherwise, Defendant denies."). The Local Rules of the United States District Courts for the Southern and

S.N. first qualified for special education services through early intervention. (56.1 ¶ 17). His services transferred through the Committee on Preschool Special Education. (*Id.* ¶ 18). S.N. attended the Fred S. Keller Applied Behavioral Analysis Preschool Program for two years, transitioned to Little Tor Elementary School for kindergarten through second grade, and transitioned to the Jesse J. Kaplan School ("Kaplan" or "BOCES Kaplan") for sixth grade. (*Id.* ¶¶ 19-22).

On June 12, 2020, the Committee on Special Education ("CSE") convened for an annual review. (*Id.* ¶ 23).[4] Dr. Stephanie O'Leary conducted a neuropsychological evaluation of S.N., which the CSE reviewed on July 12, 2020. (*Id.* ¶¶ 27, 28). Following the evaluation review, there was a consensus that S.N. would be moved to Kaplan. (T105 at 11-24). Plaintiffs specifically requested implementation of PROMPT therapy through a certified provider and Orton-Gillingham methodology for reading instruction. (56.1 ¶¶ 32, 33). These concerns were addressed by the District at a CSE meeting and there was an agreement between Kaplan and the CSE that those methodologies would be employed during S.N.'s educational day. (T106-T107). Plaintiffs contend

Eastern Districts of New York instruct that a "paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Furthermore, "[e]ach statement by the . . . opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ." *Id.* at 56.1(d). The Second Circuit "has instructed that Local Rule 56.1 is 'strict.'" *McGowan v. Stanley*, No. 23-7769-CV, 2024 WL 5038633, at *2 (2d Cir. Dec. 9, 2024) (quoting *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009)). And "district courts are 'not required to consider what the parties fail to point out in their Local Rule 56.1 statements.'" *Id.* (quoting *T.Y.*, 584 F.3d at 417)). However, in many respects, Defendant correctly notes that Plaintiffs' recitation of the fact is not supported by the record as cited. "Where . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). Because the Court is already engaged in an independent and assiduous review of the record, to the extent a statement in the Rule 56.1 Statement is inadequately supported by the record, it will be disregarded; and to the extent a denial of a properly supported fact is not followed by citation to record evidence, it will be deemed admitted.

[4] New York assigns responsibility for fulfilling the state's obligations under IDEA to a local CSE. N.Y. Educ. Law § 4402(1)(b)(1)(a); *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 833 (2d Cir. 2014).

that the District did not implement either of these services. (56.1 ¶¶ 35, 36 (citing Plaintiffs' allegations set forth in their impartial hearing request)).

S.N.'s individualized education program ("IEP") for 2021-22 established specific academic goals and behavioral goals. (*Id.* ¶¶ 37, 38). On June 9, 2022, the CSE convened for an annual review to assess S.N.'s progress towards his goals and to plan for the 2022-23 school year. (*Id.* ¶ 41; DE12). Based on its review, the CSE created an IEP for S.N. for the 2022-23 extended school year, recommending that he continue to attend a daily 8:1+2 special class at a BOCES program. (DE14-DE32).The CSE also recommended related services consisting of two 30-minute sessions per week of individual speech-language therapy, one 30-minute session per week of speech-language therapy in a group of three, three 30-minute sessions per week of individual occupational therapy, and two 30-minute sessions per week of individual physical therapy. (*Id.*). The CSE further recommended S.N. have a one-to-one aide for six-hours daily, access to an iPad in school and at home, as well as supports for school personnel on behalf of S.N. with a reading specialist, multidisciplinary team, speech-language consultation, and a psychologist. (*Id.*). Finally, the CSE recommended extended school year services for S.N. as well as special transportation. (*Id.*). The CSE also recommended parent counseling and training. (*Id.*).

On January 6, 2023, the CSE held a meeting to review S.N.'s overall progress and discuss his reevaluation. (DE33). The meeting information summary attached to the IEP indicated that S.N. was making some progress. (DE33-DE35). The private speech-language pathologist opined that S.N. seemed to make more progress the year prior and, since September, had shown a decrease in some of his skills. (DE33-DE34). She also, however, indicated that there was slow progress. (DE34). Plaintiffs indicated that they believed S.N. needed more of an ABA approach. (*Id.*). The special education teacher explained that S.N. was in a class using ABA methodology throughout

the school day. (*Id.*). The CSE consensus was that the BOCES Kaplan program was appropriate to meet S.N.'s then-current needs. (*Id.*). The January 2023 CSE created an IEP with program and related services recommendations remaining the same as those in the June 2022 IEP. (DE33-DE54).

District witnesses who attended the January 2023 CSE, and the private Board Certified Behavior Analyst ("BCBA") (*see* T528), testified that committee members from Kaplan reported that S.N.'s behaviors had improved in the school program. (T173-T174, T228-T230, T1078-T1079). Whereas the private providers and parents indicated that S.N. was demonstrating behaviors during the home program that impeded his functioning at times. (*Id.*). They also testified there was discussion during the meeting that indicated that S.N. was more motivated by the school social setting as opposed to individualized instruction alone with a teacher. (T229-T230). The CSE indicated that another meeting would be scheduled after S.N.'s private BCBA conducted classroom observations. (DE34).

Kristen Lerner, S.N.'s BCBA, conducted school observations on January 19, 26, and 30, 2026. (PE152-PE159). The District conducted a speech/language reevaluation on February 15, 2023. (56.1 ¶ 95). A quarterly IEP Progress Report was issued to the Plaintiffs on February 16, 2023. (*Id.* ¶ 88). Within the progress report, it was noted that several benchmarks had been met by the January 2023 marking period. (PE167-PE188). Dr. Elise Rosenberg Roberts conducted a Motor/Speech/Narrative Assessment on February 25, 2023 and Dr. Gabriela Irizarry completed a Neuropsychological Assessment on March 7, 2023. (56.1 ¶¶ 96, 97).

On March 10, 2023, the CSE met for a reevaluation review and a new IEP was developed. (56.1 ¶ 100; DE55). According to the meeting information summary, evaluation results were reviewed, as well as S.N.'s progress. (DE56-57). The private BCBA reviewed her January 2023

classroom observation, identifying faults with S.N.'s program at Kaplan. (DE56-DE57). The BOCES speech-language pathologist indicated that S.N. had been making slow progress since September; and although the private speech-language pathologist described S.N.'s responses as "chaotic," she also noted that he had maintained lingual control and increased his sequence movement skills and intelligibility. (DE55-DE56). S.N.'s teacher reported that he enjoyed interacting with his peers, received 100% with visuals whereas prior to using visuals his success rate was 35 to 60%; and he was working on identifying sounds and counting in a larger set. (DE56). The physical therapist reported progress toward all of S.N.'s goals, with strength and coordination improving. (*Id.*). With respect to the private neuropsychological evaluation, it was noted that the CSE would reconvene after the results from Dr. Irizarry were provided to the District. (DE56-DE57).

Plaintiffs, in the second week of May 2023, unilaterally created and implemented a "hybrid schedule." S.N. received private ABA sessions in the morning outside of school, arrived at Kaplan for school at around 10:30 a.m., and ended school at around 2:30 p.m. (T878, T892-T893, T936, T1047-T1048). This hybrid schedule continued for the remainder of the 2022-23 school year. (T936-T938).

On June 22, 2023, the CSE convened for an annual review to assess S.N.'s progress towards his goals and to plan for the 2023-24 school year. (DE80). The Kaplan team noted that S.N. had 32 absences and 27 days tardy for the year, that he left early twice a week, that he missed one-to-one instruction due to his absences, that absences impacted progress, and that S.N.'s inconsistent attendance impacted the speech-language pathologist's ability to provide instruction. (DE81). An IEP was developed in connection with the annual review. (56.1 ¶ 113).

S.N. continued throughout the 2023-24 school year in the hybrid schedule, and Kaplan adjusted his school schedule to deliver S.N.'s mandated services during the hours he was in attendance. (T1050-T1051). Dr. Rebecca Massa completed a Psychoeducational Report on August 4, 2023. (56.1 ¶ 127). On September 21, 2023, the CSE reconvened for a reevaluation review. (*Id.* ¶ 130; DE293). The CSE reviewed Dr. Massa's report as well as a classroom observation of S.N. (DE293). Dr. Massa indicated that based on clinical observations and review of records, as well as results from the then-current evaluation, S.N. might have difficulty maintaining academic skills over time. (DE294). Plaintiffs were given an opportunity to provide input and had no updates regarding S.N.'s progress or questions or concerns. (DE293-DE294). The CSE chairperson, Joseph Simoni, mentioned that S.N.'s attendance and lateness impeded his participation in all school activities. (DE294). The CSE stated it was willing to explore other program options if Plaintiffs were interested, which they indicated they were. (*Id.*).

A program search was undertaken but, ultimately, Mr. Simoni was informed by the other schools that had attempted to schedule intakes that Plaintiffs were only interested in a strict ABA program and were therefore unable to complete their intake processes. (T67-T68; *see also* T266-T267 (Dr. Massa's testimony that at least two programs called her "and said although we feel we could have an appropriate program for this student, the parents were very clear they are only interested in a program that . . . utilizes like strict ABA at least two to three hours a day and utilizes PROMPT therapy."). The District maintained throughout the alternative program search that Kaplan was an appropriate placement. (56.1 ¶ 135). Plaintiff I.N. testified that she liked a number of aspects of the Kaplan program, but believed based on expert opinion and her own opinion that it was not an appropriate program for S.N., and preferred to work with the CSE on a hybrid program. (T1039, T1052-T1055).

II. Administrative Proceedings

Plaintiffs, on December 13, 2023, filed an amended due process complaint alleging the District denied S.N. a FAPE for the 2022-23 and 2023-24 school years. (56.1 ¶¶ 151, 152). A nine-day impartial hearing was held before an IHO between March 27, 2024 and June 25, 2024. (SD6). The IHO concluded that the District failed to provide S.N. with a FAPE for the 2022-23 and 2023-24 school years, and ordered the District to, *inter alia*, pay the costs of fifteen hours per week of at-home ABA services and up to three hours per week of PROMPT therapy, as well as reimburse Plaintiffs for the costs previously incurred. (I1-I29). Defendant subsequently appealed the IHO's decision to the SRO, who sustained the appeal, reversed the IHO's decision, and vacated the relief directed therein. (SD29).

The Court has analyzed both of these decisions in their entirety and refers to them where relevant throughout this decision.

**STANDARD OF REVIEW**

I. Statutory Framework

IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States receiving public funds are required to provide a FAPE to children with disabilities. *Id.* § 1412(a)(1)(A). Public school districts must provide "special education and related services tailored to meet the unique needs of a particular child, [which are] reasonably calculated to enable the child to receive educational benefits." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998)).[5]

[5] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

The relevant state or local educational agency must conduct an individualized evaluation to determine whether a child has a disability and must develop an annual written IEP for each child with a disability. 20 U.S.C. § 1414(d). The evaluation process can be initiated by the agency or the child's parent, cannot be commenced without parental consent, and is subject to statutory temporal and procedural requirements. *Id.* § 1414(a)(1). In New York, IEPs are developed by local CSEs in conjunction with the disabled student's parents. N.Y. Educ. Law § 4402(1)(b)(1).

IDEA requires that parents be provided with an opportunity to present a complaint regarding the identification, evaluation, or placement of their child through the IEP process. 20 U.S.C. § 1415(b)(6)(A). Parents who are dissatisfied with a school district's IEP may unilaterally provide services, at their own risk, and then seek a retroactive reimbursement from the local school district. *Id.* § 1412(a)(10)(C). If parents in New York disagree with any part of the IEP process, they may request an impartial due process hearing administered by an IHO appointed by the local education board. *See id.* § 1415(f); N.Y. Educ. Law § 4404(1)(a). The IHO's decision may be appealed to an SRO. *See* N.Y. Educ. Law § 4404(2); *see also* 20 U.S.C. § 1415(g). The SRO's decision may thereafter be challenged in state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A).

"[I]n IDEA cases 'we apply the three-part *Burlington/Carter* test and consider: (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) the equities.'" *Archibald v. Samuels*, No. 25-2330, 2026 WL 2819736, at *1 (2d Cir. Sept. 21, 2026) (quoting *Cruz v. Banks*, 134 F.4th 687, 691 (2d Cir. 2025)). The three-part *Burlington/Carter* test is named after the Supreme Court cases that established it. *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). If the court concludes the school district provided a FAPE as required under the first prong of the

test, the court need not consider the second and third prongs. *F.L. v. Bd. of Educ. of Great Neck U.F.S.D.*, 274 F. Supp. 3d 94, 125 (E.D.N.Y. 2017), *aff'd*, 735 F. App'x 38 (2d Cir. 2018).

II. Summary Judgment

"Summary judgment in the IDEA context . . . is only a pragmatic procedural mechanism for reviewing administrative decisions." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 143 (2d Cir. 2019). "Federal courts reviewing administrative decisions [under IDEA] must give 'due weight' to the administrative proceedings, 'mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003) (quoting *Walczak*, 142 F.3d at 129).

Courts reviewing a state agency's decision must base their decision on a preponderance of the evidence and may not substitute their own views on educational policy for those of the school authorities. *W.A.*, 927 F.3d at 144. Review of the state's educational decisions is therefore limited, demanding a level of scrutiny that is more critical than clear error but not nearly as complete as *de novo*. *See C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014).

Deference to the administrative decision is particularly appropriate when the administrative officer's review has been thorough and careful, and where—as here—the court's decision is based solely on the administrative record. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012). While this Court "do[es] not simply rubber stamp administrative decisions," *Walczak*, 142 F.3d at 129, review of the administrative decision "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). "However, the district court is not required to defer to

administrative determinations regarding matters of law." *K.H. v. New York City Dep't of Educ.*, No. 12-CV-01680, 2014 WL 3866430, at *15 (E.D.N.Y. Aug. 6, 2014).

Where the IHO and SRO disagree, courts must defer to the reasoned conclusions of the SRO as the final state administrative determination, unless "the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012); *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 160 (2d Cir. 2014) ("Where the decisions of the IHO and the SRO disagree, we defer to the decision of the SRO as the final state administrative determination . . . ."). The Court must first determine whether the SRO reached "reasoned conclusions" before affording deference. *See M.H.*, 685 F.3d at 246 ("Reviewing courts must look to the factors that normally determine whether any particular judgment is persuasive [and must ultimately] defer to the SRO's decision on matters requiring educational expertise unless [the court] concludes that the decision was inadequately reasoned."). "But the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role . . . . [T]he purpose of the IDEA is to provide funding to states so that they can provide a decent education for disabled students consistent with their traditional role in educating their residents." *Id.* at 244.

At the administrative level, the burden of proof and persuasion falls on the school district to demonstrate that the student was not denied a FAPE. N.Y. Educ. Law § 4404(1)(c). On appeal to a federal court, however, the burden of demonstrating that an SRO ruled incorrectly falls on the party challenging that decision. *Phillips v. Banks*, No. 23-362, 2024 WL 1208954, at *2 (2d Cir. Mar. 21, 2024).

**ANALYSIS**

Plaintiffs press three arguments in support of their motion for summary judgment, reflecting the *Burlington/Carter* factors: (i) Defendant failed to provide S.N. a FAPE; (ii) the Parent-provided program was appropriate; and (iii) the equities favor Plaintiffs. (*See generally* Doc. 14).[6] Defendant maintains, in support of its argument for summary judgment, that the SRO's determination was sound and Plaintiffs fail to meet their burden for reversal. (*See generally* Doc. 14-1).

Plaintiffs, challenging the SRO's decision, do not once address the substance of the SRO's detailed 29-page decision in any of the papers submitted in this action. "[G]iven the deference due to the SRO's determination as to prong one [of the *Burlington/Carter* test], it is 'incumbent upon the Parents to bring to the Court[']s attention any procedural or substantive flaws and explain why they allegedly warrant reversal." *T.Y. v. New York City Dep't of Educ.*, No. 15-CV-01508, 2016 WL 11263665, at *9 (E.D.N.Y. Aug. 26, 2016) (quoting *M.H. v. New York City Dep't of Educ.*, No. 10-CV-01042, 2011 WL 609880, at *7 (S.D.N.Y. Feb. 16, 2011)), *adopted by*, 213 F. Supp. 3d 446 (E.D.N.Y. 2016). Indeed, "an appellant seeking to have a reviewing court credit an IHO's determination over an SRO's determination would benefit from calling our attention to an SRO's specific errors in law, fact, or reasoning." *M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725

[6] To decide whether an IEP complies with the IDEA, courts follow a two-part test. *A.G. on behalf of J.G. v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, No. 16-CV-01530, 2017 WL 1200906, at *7 (S.D.N.Y. Mar. 29, 2017). "The first prong examines the procedural adequacy of the IEP, asking whether the state has complied with the procedures set forth in the IDEA." *Id.* The second prong weighs the substantive adequacy of the IEP. *Id.* Plaintiffs briefly mention, solely in connection with their arguments concerning the third prong of the *Burlington/Carter* test concerning the equities, that they believe the District engaged in procedural violations that denied them the ability to "ensure IEP implementation fidelity." *Id.* at 20. Plaintiffs do not, however, appear to assert procedural violations of the IDEA as a basis for appeal. The thrust of their arguments in support of summary judgment is a challenge to the substantive adequacy of the IEPs. Having carefully reviewed the record, the Court finds no issue with the procedures followed by the CSE in developing the IEPs at issue.

F.3d 131, 139 (2d Cir. 2013). Although Plaintiffs have failed to advance any procedural, substantive, or reasoning flaws in the SRO's decision, the Court has undertaken an independent review of the record and considers the arguments advanced by the parties.

With respect to Plaintiffs' argument regarding a denial of a FAPE, Plaintiffs advance two arguments: First, the District failed to provide appropriate ABA programming and related services. Second, S.N. failed to make progress under the District's program, and the District failed to modify the program. These arguments will be analyzed *seriatim*.

I. Appropriate ABA Programming and Related Services

Plaintiffs argue that the District denied S.N. a FAPE for the 2022-23 and 2023-24 school years by failing to provide appropriate ABA programming. (Doc. 14 at 19). Plaintiffs base this contention on the January 2023 private BCBA observation, that error correction was not followed by discrete trials which rendered the District's implementation of ABA actively harmful to S.N.'s educational development. (*Id.* (citing I4, DE221, DE226)). Plaintiffs also argue that the District failed to provide appropriate related services including PROMPT therapy, Orton-Gillingham reading instruction, and appropriate speech therapy services. (*Id.* at 20).

The SRO, however, carefully considered the BOCES Kaplan social communication program, noting that the BOCES assistant director addressed the BCBA's observation report and its focus on error correction procedure, indicating that there are many different strategies and error correction procedures. (SD19). The SRO noted that while Kaplan "was not strictly an ABA program, it incorporated principles of ABA (*i.e.*, reinforcement, discrete trials, and charting) . . . [and] all programs at BOCES Kaplan used ABA to help their learners." (SD27-SD28). The SRO also considered testimony that those techniques were research-based and developed in collaboration with behaviorists with whom the program partnered. (*Id.*).

Plaintiffs contend the group speech therapy model employed at Kaplan prevented S.N. from developing the social communication skills he needed. (*Id.* at 20). With respect to PROMPT and Orton-Gillingham reading instruction, Plaintiffs argue they specifically requested integration of these services which were recommended by Dr. O'Leary, but the services were not provided at Kaplan as promised. (*Id.*).

The SRO addressed each of Plaintiffs' contentions on this score, analyzing the record and concluding that these methodologies—such as strict ABA methods and PROMPT therapy delivered in a specific manner—were a matter of preference, not evidence of the denial of a FAPE. (SD28). Where the IEP provides for a balanced program to meet the student's needs, the IEP developed meets the IDEA's dictates. *See A.G.*, 2017 WL 1200906, at *9 ("[T]here is no requirement that any particular methodology be used, or that it be used exclusively."). The IDEA "guarantees . . . an appropriate education, not one that provides everything that might be thought desirable by loving parents." *Walczak*, 142 F.3d at 132.

The SRO's thorough and well-reasoned decision is entitled to deference. Plaintiffs have not met their burden to show that the SRO ruled improperly with regard to their arguments concerning the ABA programming and related services; and in concluding that the District offered S.N. a FAPE for both school years.

II. <u>S.N.'s Failure to Make Progress and the District's Failure to Modify the Program</u>

Plaintiffs also argue that S.N. was denied a FAPE because he failed to make progress and the District failed to modify his program. Specifically, Plaintiffs contend that "the quarter one 2022-2023 progress report showed lack of meaningful progress." (Doc. 14 at 11 (citing 56.1 ¶

83)).[7] Plaintiffs also refer to "[t]eam discussions" which acknowledged S.N.'s lack of meaningful progress, and IEP progress reports which allegedly confirm that S.N. failed to meet his goals during 2022-23. (*Id.* (citing I10)). Plaintiffs point to Dr. Irizarry's evaluation which documented stagnancy and regression in S.N.'s academic achievements. (*Id.* at 14-15).

The SRO reviewed the comments in the meeting information summary attached to each of the IEPs for the 2022-23 and 2023-24 school years, together with the BOCES Kaplan annual reports, and noted that S.N. made progress in the program leading up to the CSEs who engaged in educational planning for S.N. for the 2022-23 and 2023-24 school years. (SD12-SD20). For example, a review of the information available to the CSE at the June 9, 2022 annual review indicated progress during the 2021-22 school year such that continuation of similar programming for 2022-23 school year was reasonably calculated to enable S.N. to continue to make progress. (SD15-SD16). With respect to the January 2023 IEP, S.N.'s teacher indicated some progress, and the private speech-language pathologist indicated that slow progress had been seen. (SD16). The SRO also explained that, based upon "the March 2023 BOCES Kaplan annual report, at that point, the student was making progress, albeit at a slow rate, in the BOCES Kaplan program." (SD24).

The SRO thoroughly reviewed and described the private BCBA's observations of S.N. as well as the testimony of the BOCES assistant director and school psychologist, identifying the clear tension between them. (SD18-SD19). While the BCBA took issue with the Kaplan program and pointed out faults, as the SRO correctly stated, the CSE was not obligated to adopt the recommendations of the private provider. *J.C.S. v. Blind Brook-Rye Union Free Sch. Dist.*, No. 12-CV-02896, 2013 WL 3975942, at *11 (S.D.N.Y. Aug. 5, 2013) ("[T]he law does not require

---

[7] This paragraph in the statement of facts cites to T181 at 4-9, which is a colloquy concerning the District's "Exhibit 2." Based upon the Bates numbering index for the administrative record, it appears that the District's Exhibit 2 is reproduced at DE12-DE32, which is the June 9, 2022 CSE annual review.

an IEP to adopt the particular recommendation of an expert; it only requires that that recommendation be considered in developing the IEP."). In any event, the reports made to the CSE failed to demonstrate that the school-based program was not meeting S.N.'s needs (SD17). Further, and despite the tension between the school-based and home-based providers, the March 2023 CSE meeting information summary indicates that S.N. was receiving educational benefits from the school-based programming. (SD21).

The SRO explained "the evidence points to Plaintiffs' implementation of the hybrid program as an obstacle to the student's ability to achieve the same progress in the BOCES Kaplan program at the end of the 2022-23 school year." (SD24). The September 2023 meeting information summary supports the conclusion that the attendance and lateness issues resulting from the hybrid program impeded progress. (DE293-DE315). The September 2023 CSE also considered different options to try to respond to Plaintiffs' preferences, but, as the SRO concluded, S.N's then-current IEP and related services were reasonably calculated to enable S.N. to make progress in light of the circumstances. (SD26-SD27).

Accordingly, Plaintiffs have not met their burden to show that the SRO ruled improperly with regard to their arguments concerning S.N.'s progress and the alleged failure of the District to modify the program; and in concluding that the District offered S.N. a FAPE for both school years. Rather, the evidence supports the SRO's determination that the preponderance of the evidence supports a finding that the IEPs developed for 2022-23 and 2023-24 were reasonably calculated to enable S.N. to make progress in light of the circumstances, and the District offered S.N. a FAPE for both school years.

Given the conclusion that the District provided a FAPE for both school years as required under the first prong of the *Burlington/Carter* test, the court need not and does not consider the

second and third prongs. *F.L.*, 274 F. Supp. 3d at 125 (E.D.N.Y. 2017). Accordingly, the Court does not reach the issue of whether the private services unilaterally obtained by Plaintiffs were appropriate or whether equitable considerations support Plaintiffs' claim for reimbursement.

## CONCLUSION

Based upon all the foregoing, Defendant's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 14 and close this case.

**SO ORDERED**:

Dated: White Plains, New York
September 28, 2026

Philip M. Halpern
United States District Judge